UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-80527-KAM

SETH IAN RUBINSON,

     Plaintiff,

vs.

HARVEY CHARLES RUBINSON,

     Defendant.

_____/

## OPINION AND ORDER

THIS Cause is before the Court upon Defendant's Motion to Dismiss [DE 13].   Plaintiff Seth Rubinson filed a Complaint [DE 1] alleging defamation per se and intentional infliction of emotional distress.   Defendant Harvey Rubinson moves to dismiss both counts under Fed. R. Civ. P. 12(b)(6).   Plaintiff filed a Response in Opposition [DE 14].   The Court has carefully considered the matter and is fully advised in the premises.

## I.   BACKGROUND

Plaintiff Seth Rubinson ("SIR" or "Plaintiff") filed the instant action against his father Defendant Harvey Rubinson ("HCR" or "Defendant") claiming defamation per se and intentional infliction of emotional distress [DE 1].   The Complaint alleges that Plaintiff is an attorney who practices out of Houston, Texas and is licensed to practice in Florida, Massachusetts, and Texas. [*Id.* at ¶ 1].   Plaintiff has a "minor daughter who is developmentally delayed and medically fragile arising from a profoundly rare Grade IV intraventricular hemorrhage suffered as a neonate and requiring a lifetime of direct care and financial support." [*Id.* at ¶ 10].   Plaintiff's daughter "attends a highly specialized private school in Houston for developmentally delayed children with learning

ability which she shall attend until 21 years of age, thereafter continuing to reside with SIR and relying on SIR's income for her lifetime." [*Id.*].

Defendant resides in West Palm Beach, Florida and is a senior financial operations manager who recently served as the chief financial officer of Micelle Biopharma.  [*Id.* at ¶¶ 3, 6].  Defendant also operates an independent turnaround and management consulting business.  [*Id.* at ¶ 5].

The Complaint alleges Defendant sent several emails to Defendant's business colleagues that contained statements that defamed Plaintiff.  [*Id.* at ¶ 21].  Plaintiff explains he had access to Defendant's email account as he purchased and maintains the email service for Defendant and frequently assists Defendant with technological difficulties.  [*Id.* at ¶ 16].  Plaintiff alleges that during one such incident assisting Defendant in accessing a device specific password, Plaintiff encountered the emails.  [*Id.* at ¶ 21].

The emails are not attached to the Complaint but are paraphrased or quoted in part or in whole within the Complaint.  The first email sent on March 8, 2019 to Jing Liang, a venture capitalist, allegedly stated Defendant requested a large interest in the company because he used his retirement savings in an effort to provide experimental cancer medications for Defendant's wife and Plaintiff's mother, as well as "[HCR's] continuing financial assistance for [SIR's] daughter who had a brain bleed at birth and has severe epilepsy. The financial support is necessary so she can attend a wonderful special needs school in Houston."  [*Id.* at ¶¶ 21-22].

The Complaint alleges Defendant also sent a defamatory email on May 24, 2019 to Pete DeLay, one of the Tennessee businessmen who purchased Micelle Biopharma, "stating to Mr. DeLay that he was not in a position to make certain recommended real estate investments because, in pertinent part of HCR's 'continuing financial assistance for my older son's daughter who had a

brain bleed at birth and has severe epilepsy. The financial support is necessary so she can attend a wonderful special needs school in Houston.'" [*Id.* at ¶ 25]. The Complaint further alleges that within that email Defendant invoked his continuing financial assistance to Plaintiff's daughter when requesting a performance bonus. [*Id.*].

The Complaint alleges that Defendant "committed on July 20, 2019, what was the pinnacle of defamation and injury" when Defendant emailed Mr. Liang writing:

> Hi Jing,
> You mentioned while I was driving you to the airport two weeks ago that you would send me a letter describing my agreement with Heliomebio since Matthew Weill has not sent me any documentation. I hate to bother you, but I am only asking you now because my bi-polar son's wife called me this morning asking for money and my son with the brain damaged daughter is also asking me for money even though they know that I used almost all of my retirement savings paying for experimental cancer treatments in an attempt to save my wife's life. Thank you for your consideration in this matter.
> Best regards, Harvey

[*Id.* at ¶ 26].

Plaintiff further alleges that when he confronted Defendant about the alleged defamatory emails, Defendant "became infuriated and threatened that if [Plaintiff] took legal action, [Defendant] would contact SIR's clients to accuse him of 'elder abuse,' . . . ." [*Id.* at ¶¶ 31-32]. The Complaint claims that before bringing the instant action, Plaintiff demanded that Defendant "immediately send emails with carbon copy to [Plaintiff] fully retracting his statements" to Liang and DeLay "concerning both support of [Plaintiff]'s developmentally delayed daughter, as well as using his purported retirement funds for life-saving measures for the cancer care of [Plaintiff]'s mother," but Defendant refused "claiming that he placed telephone calls . . . retracting his defamatory statements." [*Id.* at ¶ 33].

## II.  LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires a short and plain statement of

the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  The Supreme Court

has held that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff□s obligation to provide the 'grounds' of his 'entitlement to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do;" additionally, "[f]actual allegations must be enough to raise a right to

relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citation and alteration omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.*  Thus, "only a complaint that states a plausible

claim for relief survives a motion to dismiss." *Id.* at 679.  The Court must accept all plaintiff□s

factual allegations as true in determining whether a plaintiff has stated a claim for which relief

could be granted. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## III.    DISCUSSION

### 1.    **Defamation per se:**

Plaintiff's first count, defamation per se, is a tort recognized under Florida law when

brought against a non-media defendant. *Blake v. Giustibelli*, 182 So. 3d 881, 884–85 (Fla. Dist.

Ct. App. 2016) ("[A]fter *Gertz*, in libel cases involving media defendants, fault and proof of

damages must always be established. . . . Libel per se otherwise still exists in Florida.").[1]  "Under

---

[1] *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011), *certified question answered*, 107 So. 3d 362 (Fla. 2013) ("As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law.").

Florida law, to state a claim for defamation—libel or slander—the plaintiff must allege that: '(1) the defendant published a false statement; (2) about the plaintiff; (3) to a third party; and (4) that the falsity of the statement caused injury to the plaintiff.'" *Matonis v. Care Holdings Grp., L.L.C.*, 423 F. Supp. 3d 1304, 1315 (S.D. Fla. 2019) (quoting *Alan v. Wells Fargo Bank, N.A.*, 604 Fed. App'x. 863, 865 (11th Cir. 2015)).   "A written publication constitutes libel per se under Florida law if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015).   "The significance of the classification of a communication as actionable per se lies in the fact that its victim need not plead or prove malice (except where a privilege is involved) or special damage because malice and the occureence [sic] of damage are both presumed from the nature of the defamation."   *Wolfson v. Kirk*, 273 So. 2d 774, 777 (Fla. Dist. Ct. App. 1973).

Here, Plaintiff asserts that his libel per se claim satisfies two of the three recognized bases: that the statements made by Defendant subject Plaintiff to hatred, distrust, ridicule, contempt or disgrace; and that the "statements tend to injure Plaintiff in his profession as lawyer in the states of Florida, Texas, and Massachusetts whereas the hallmarks of an attorney include trustworthiness and professionalism."  [DE 1 at ¶ 39].

Plaintiff asserts the statements identified in the Complaint portray him as a "compassionless victimizer unable to provide for his family."  [DE 1 at ¶ 38].  He also contends that Defendant defamed him by implying Plaintiff "is unable to provide for his daughter's education and welfare without the assistance of [Defendant] notwithstanding that [Defendant] does

not and has not provided support to [Plaintiff] for the benefit of [Plaintiff]'s daughter's education or otherwise." [*Id.* at ¶ 37].

Defendant moves to dismiss this claim arguing that "none of the quoted language Plaintiff attributes to Defendant contains any statements that could be interpreted in the ways in which Plaintiff's narrative describes them." [DE 13 at 2]. Additionally, Defendant notes that the quotes allegedly attributable to Defendant in paragraphs 22, 25, 26, and 27 of the Complaint do not "even contain the Plaintiff's name or relate to his profession as a lawyer." [*Id.* at 2-3]. Moreover, Defendant underscores that the Court is not only limited to the four corners of the Complaint in assessing the motion to dismiss, but further, the Court is constrained to the four corners of the publication and may not consider outside context in a libel per se claim. *See Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998) ("When determining whether a published statement constitutes libel per se, an arbiter of fact may consider only the 'four corners' of the publication. In addition, the language of the document should not be interpreted in the extreme, but construed as the 'common mind' would naturally understand it.") (citations omitted).

In assessing the first category of statements, the Court fails to see how, even if false, a grandfather invoking his developmentally delayed granddaughter's significant medical expenses would subject Plaintiff to "hatred, distrust, ridicule, contempt, or disgrace." *Scobie v. Taylor*, No. 13-60457-CIV, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013). Further, taking the allegations in the Complaint as true, Plaintiff states that he has previously sought financial assistance from Defendant:

> Adding to the traumatic nature of [Defendant]'s efforts to use [Plaintiff]'s daughter for financial gain was the fact that throughout [Plaintiff]'s life, notwithstanding his success as an attorney, **when financial strain arising from [daughter]'s dangerous medical condition and developmental disabilities were such that**

> **[Plaintiff] would request financial assistance from [Defendant]** years ago, any
> **amounts provided by [Defendant] for financial assistance associated with his**
> **granddaughter were loans** for which [Defendant] kept strict records and required
> repayment from [Plaintiff].

[DE 1 at ¶ 23]. Accordingly, if Plaintiff himself has volunteered in a federal court filing that he

has requested financial assistance from Defendant due to expenses relating to Plaintiff's daughter,

it is hard to conceive of how, when considering the emails alone, Defendant's mention of virtually

the same conduct suddenly casts Plaintiff in a negative light, let alone, subjects him to hatred,

distrust, ridicule, contempt, or disgrace.

Additionally, this is analogous to *Aflalo v. Weiner*, where the court dismissed a defamation

per se claim where the defendant allegedly posted about the plaintiff on Facebook. *Aflalo v.

Weiner*, No. 17-61923-CIV, 2018 WL 3235529, at *1 (S.D. Fla. July 2, 2018). There, the

statement read: "Yurim and Isaac took advantage of a old 94plus sick man elder abuse [sic]". *Id.*

The court rejected the plaintiff's argument that the statement qualified as defamation per se on two

grounds: imputation of the commission of an infamous crime and that it subjects plaintiff to hatred,

distrust, ridicule, or contempt. *Id.* Critically, the court contrasted the Facebook post with a

seminal defamation per se case; "[w]hereas in *Caldwell* a widely-circulated newspaper published

damaging statements about a sitting governor, here the Defendant wrote a grammatically flawed

and incoherent post on his Facebook wall about Plaintiff, a distant relative." *Id.* at *4 (citing

*Caldwell v. Crowell-Collier Pub. Co.*, 161 F.2d 333, 334 (5th Cir. 1947)). The court concluded

"Plaintiff has failed to convincingly plead that the Statement, or the circumstances surrounding it

(*i.e.*, the parties involved, the medium chosen, the words used), engender the type of hatred,

distrust, ridicule, contempt or disgrace that is required to succeed under this prong." *Id.*

Similarly, the Court here finds that Plaintiff fails to state a claim for libel per se under this

theory. *See id.* at *2 ("Analyzing the Statement as the 'common mind' would understand it,

'[w]here the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in ... dismissing the complaint for failure to state a cause of action.'" (quoting *Wolfson*, 273 So.2d at 778)).

As for the theory that the statements may interfere with a claimant's profession, Florida law recognizes two iterations. "One iteration finds actionable any language that 'tend[s] to injure a person in [his] office, occupation, business, or employment and which in natural and proximate consequence will necessarily cause injury.'" *Scobie*, 2013 WL 3776270, at *2 (quoting *Metropolis Co. v. Croasdell*, 145 Fla. 455, 199 So. 568, 569 (Fla.1941)). "Another iteration requires language that 'imputes to another conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession or office.'" *Id.* (citing *Fun Spot of Fla. v. Magical Midway of Cent. Fla., Ltd.,* 242 F.Supp.2d 1183, 1197 (M.D. Fla. 2002)).

Here, Plaintiff argues in his Response that Defendant's emails sent to "numerous highly influential businesspeople" communicated "that the Plaintiff was purportedly victimizing him for money despite that he (the Defendant) had purportedly spent all of his retirement savings trying to save the deceased mother of the Plaintiff from terminal cancer." [DE 14 at PDF 7]. Plaintiff insists "these defamatory statements place the moral character and professional code of ethics of the Plaintiff at issue to anyone reading these outrageous statements." [*Id.*].

"Where courts have found conduct to be incompatible with one's profession, the conduct referred to in the defamatory statement went directly to a person's ability to perform duties essential to his or her employment, or was sufficiently related to skills required of the profession." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1249 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015).

In *Klayman v. Judicial Watch, Inc.*, the court, considering a motion for summary judgment about a website post that accused the plaintiff of being convicted of failing to pay child support,

explained its two-step process. *Id.* First, the court found that "[a] person reading the statement at issue could reasonably understand it to implicate [plaintiff]'s moral character and professional code of ethics." *Id.* at 1250. The court elaborated, "[o]n its face, the statement is reasonably capable of a defamatory meaning as it accuses [plaintiff] of being convicted of a crime relating to his moral character. Whether the statement actually impugns [plaintiff]'s trade or profession as an attorney, thereby constituting defamation *per se,* is a matter for the jury." *Id.*

Here, the statements in Defendant's emails are not reasonably capable of having a defamatory meaning or being understood to implicate Plaintiff's moral character and professional code of conduct. Even the email that Plaintiff describes as the "pinnacle of defamation," which stated, "my son with the brain damaged daughter is also asking me for money even though they know that I used almost all of my retirement savings paying for experimental cancer treatments in an attempt to save my wife's life," falls short of actionable conduct under this prong. [DE 1 at 7].

The instant case is distinguishable from other cases where the plaintiff's profession is directly invoked, the statement overtly reflects negatively on the plaintiff's professional capacity, or the statement was made directly to plaintiff's clients or employers. *See e.g. Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 457 (Fla. Dist. Ct. App. 1999) ("the statement about [plaintiff] suggests that his judicial duties could be improperly influenced. This imputes conduct or a condition incompatible with the proper exercise of his judgeship and constitutes slander *per se.*").

Instead, this case is more analogous to *Scobie v. Taylor*, which dismissed a defamation per se claim. *Scobie*, 2013 WL 3776270, at *1. The Court contrasted the case with others where "the *per se* defamatory statements imputed conduct to the plaintiffs incompatible with the essential functions of their respective jobs," however, "the conduct suggested of [plaintiff]—that he was interviewing with competitors of Star Creations—does not impute to him a characteristic

inconsistent with his duties as a framed art and wall décor salesman. Thus, there can be no claim for defamation *per se* under the facts alleged." *Id.* at *3. The Court elaborated that "[w]hile [defendant]'s statements *might,* under some set of facts, conceivably cause injury to his employment with Star Creations, the statements are not injurious in and of themselves and, hence, not defamatory *per se.*" *Id.* at *4. "To gauge whether the statements are defamatory, the Court would have to look outside the four corners of the statements to evaluate all the surrounding facts and circumstances. When context is considered and 'extrinsic facts and innuendo are needed to prove the defamatory nature of the words,' the statements are not defamatory *per se.*" *Id.* (quoting *Carlson v. WPLG/TV10, Post–Newsweek Stations of Fla.,* 956 F. Supp. 994, 1006 (S.D. Fla. 1996)).

Plaintiff's claim fails for similar reasons. Interpreting the statements as the "common mind" would, the Complaint fails to state a claim under this prong. Without considering outside context, the veiled statements that Plaintiff, often unnamed, allegedly asked his father, Defendant, for money to help provide for Plaintiff's daughter's needs are not injurious in and of themselves. Plaintiff simply fails to allege how this implicates his moral character and professional code of conduct.

Accordingly, the defamation claim is dismissed with prejudice as Plaintiff has not sought leave to amend. *Isaiah v. J.P. Morgan Chase Bank, N.A.*, 960 F.3d 1296, 1308 n. 9 (11th Cir. 2020); *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F. 3d 541, 542 (11th Cir. 2002) (*en banc*) ("[A] district court is not required to grant a plaintiff leave to amend his complaint *sua sponte* when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."). Even if leave to amend had been requested, it would appear that any amendment would be futile. The allegedly defamatory statements will not change

with an amended complaint, and there is no reasonable basis to believe that Plaintiff withheld from the complaint other allegedly defamatory statements that would be more damaging.

## 2. Intentional Infliction of Emotional Distress

Count II asserts a claim of intentional infliction of emotional distress ("IIED"), alleging Defendant's "defaming of [Plaintiff] in the manner set forth above constitutes deliberate or reckless infliction of mental suffering upon [Plaintiff]" and that the "defaming . . . constitutes outrageous conduct" which "caused and continues to cause [Plaintiff] severe emotional distress." [DE 1 at ¶¶ 41-43].

"Under Florida law, a plaintiff must plead the following elements in order to state a claim for intentional infliction of emotional distress: 1) extreme and outrageous conduct; 2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; 3) severe emotional distress suffered by the plaintiff and 4) that the conduct complained of caused the plaintiff's severe emotional distress." *Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1317 (S.D. Fla. 2017). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985). "Whether conduct is outrageous enough to support a claim for intentional infliction of emotional distress is a question of law, not a question of fact." *Roberts v. Amtrust Bank*, No. 14-81266-CIV, 2014 WL 7273982, at *2 (S.D. Fla. Dec. 22, 2014).

Defendant moves to dismiss arguing the claim consists of conclusory allegations. [DE 13 at 4]. Defendant also argues the emotional distress claim "rests on the identical allegations on which Plaintiff bases his defamation claim" and should be dismissed because it pleads no independent basis for infliction of emotional distress. [*Id.* at 4-5].

Plaintiff responds that the Complaint adequately pleads a claim for IIED and highlights a range of cases where courts found actionable conduct.  [DE 14 at PDF 7-10].

While Plaintiff notes that a multitude of instances can support a claim for IIED, Defendant correctly argues that the IIED claim must be distinct from the defamation claim.

"In Florida, a single publication gives rise to a single course of action."  *Ortega Trujillo v. Banco Cent. del Ecuador*, 17 F. Supp. 2d 1340, 1343 (S.D. Fla. 1998).   "[A] plaintiff cannot transform a defamation action into a claim for intentional infliction of emotional distress simply by characterizing the alleged defamatory statements as 'outrageous.'"  *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992); *see also Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 636 (Fla. Dist. Ct. App. 1983), *approved,* 467 So. 2d 282 (Fla. 1985).

In *Boyles*, the Florida Fifth District Court of Appeal held that "the problem with Count II, as we view it in the factual context alleged in this case, is that it does not set forth an *independent* tort for the recovery of damages for emotional distress. That factor has been an intrinsic, historic aspect of the tort." *Id.* (citing *LaPorte v. Associated Independents, Inc.,* 163 So. 2d 267 (Fla. 1964); *Slocum v. Food Fair Stores of Florida,* 100 So. 2d 396 (Fla. 1958); *Kirksey v. Jernigan,* 45 So. 2d 188 (Fla. 1950)).  The court continued "[t]he 'outrageous conduct' alleged here is defamation, which gives rise to various elements of damage, including personal humiliation, mental anguish and suffering . . . In other words, the allegations of this count describe the tort of libel while characterizing it as 'outrageous conduct.' As such, it is merely an imperfect repetition of Count I."  *Id.*

By the Complaint's own phrasing, Count II is entirely based on the conduct described in Count I and therefore cannot serve the basis for an independent tort.

Moreover, even if not barred by the single-publication rule, Plaintiff has failed to allege any facts supporting the allegations of all the required elements.  Count II consists of merely conclusory allegations, which cannot support a claim for IIED.  Even considering the few facts applicable to the IIED claim, the Court finds that the conduct alleged does not meet the standard of outrageousness under Florida law.  "Liability does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Roberts*, 2014 WL 7273982, at *2 (quoting *Scheller v. Am. Med. Int'l, Inc.,* 502 So.2d 1268, 1271 (Fla. Dist. Ct. App. 1987)).

For the same reasons the defamation per se count is dismissed with prejudice, the Court also dismisses this claim with prejudice.  *Isaiah,* 960 F.3d at 1308 n. 9; *Wagner*, 341 F.3d at 542; *see also Noveshen v. Bridgewater Assocs., LP,* 47 F. Supp. 3d 1367, 1377 (S.D. Fla. 2014) ("As a matter of law, the allegations in this case cannot rise to the level of extreme and outrageous conduct so as to give rise to a valid claim of intentional infliction of emotional distress. Therefore, amending this claim would be futile.").

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant's Motion to Dismiss [**DE 13**] is **GRANTED**.

2. Counts I and II are **DISMISSED WITH PREJUDICE**.

3. The Clerk shall **CLOSE** the case.  Any other pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 24th day of July, 2020.

KENNETH A. MARRA
United States District Judge